UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES NICHOLS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 3:12-cv-042 |
| MICHIGAN CITY PLANT PLANNING DEPT., | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

James Nichols was hired as a substitute janitor by Michigan City Plant Planning Department in early January 2011, and a few weeks later, he was placed on a temporary assignment at Springfield Elementary School. The posting was an uncomfortable mess from the outset. He says that staff and students alike were hostile to him; according to his allegations, they created messes for the sole purpose of making him clean them up, treated him with constant suspicion, and on one occasion, called him an inflammatory racial epithet. Finally, after a few weeks on the job, the Planning Department informed Nichols that he was no longer needed at the school and ultimately declined to place him on another assignment.

Nichols responded to this treatment by filing a lawsuit asserting Title VII claims for racial harassment and discrimination.[1] He primarily alleges that he was harassed and

---

[1] In a subsequent filing, Nichols advised me that he wished to add a defamation claim to his lawsuit, citing a position statement filed by the Planning Department in a subsequent EEOC proceeding. (DE 16.) As the Planning Department correctly notes, even if I were inclined to consider it, this state law claim is barred by principles of absolute immunity because the statement was made in the context of a quasi-judicial proceeding. *See Hartman v. Keri*, 883 N.E.2d 774, 779-80 (Ind. 2008).

1

treated poorly by members of the Springfield Elementary staff, and that rather than intervene, his supervisor dismissed him "under racially motivated circumstances." The case is now before me on the Planning Department's summary judgment motion.

I can sympathize with Nichols to some degree. If you believe him, the staff at Springfield Elementary seems to have treated him quite poorly. But professional misconduct – even of the most egregious nature – isn't Title VII harassment or discrimination, at least not necessarily. It has to be motivated by some sort of racial bias. And in this case, once I parse through the mistreatment that Nichols *thinks* was racially motivated but doesn't have any tangible basis for his belief, I'm left with a single racial slur used by a non-supervising co-worker. And while that theoretically could be enough to support a Title VII harassment claim (though as I'll explain below, I actually don't actually think it is here), the fact is that he didn't tell the Springfield Elementary principal or his employer until it was much too late for them to do anything to remedy the situation. That's fatal to his lawsuit. Therefore, and for the reasons discussed below, the Planning Department's summary judgment motion (DE 27) is **GRANTED**.

## BACKGROUND

Nichols began working for the Planning Department as a substitute custodian on January 5, 2011. (DE 1-1 at 2). Nichols' supervisors there were Doug Schroeder and John Yeakey, both of whom are white. (DE 30-3 at 14). He was initially assigned to Joy Elementary, where he worked for three days and was not used for a brief time thereafter. (DE 30-3 at 4.) Nichols' second assignment was to Springfield Elementary on January 19, 2011. (DE 30-3 at 4.)

As I alluded to above, things started to go wrong pretty much from the moment that Nichols walked in the door. He alleges that when he arrived at the school he asked two students and two teachers (I think – it's a little unclear in the record whether it was two teachers and two students, or whether it was two young teachers) where the janitor's closet was, but they falsely claimed not to know. (DE 30-3 at 6.) There is also a vague suggestion that Bette Johnston, the food service manager at Springfield Elementary, acted frightened towards him on multiple occasions. (DE 30-3 at 10.) Nichols also claims that on his second day at the school, someone left a purse out, ostensibly with the purpose of entrapping him into stealing it (DE 1-1 at 2-3; DE 30-3 at 15-17), and that Johnston routinely left the cash register open when he was present (again, with the implication that she was trying to bait him into stealing money). (DE 30-3 at 20-21.)

Nichols alleges that on his third day on the job, two staff members (including Johnston) at Springfield Elementary threw food and garbage on the floor after he had cleaned it. (DE 1-1 at 2.) He claims that he was called a "boy" by school personnel on more than one occasion, which he believes was racially motivated. (DE 30-3 at 43.) Perhaps most explicitly, he says that on a single occasion, Johnston or another cafeteria worker (it's a little unclear which) walked by him and called him "a black [racial epithet]." (DE 30-3 at 22-23.) Notably, Nichols didn't report that incident to the school principal or his superiors at the Planning Department. (DE 30-3 at 25.)

Matters finally came to a head on February 7, 2011, when, according to Nichols, he was harassed by Johnston, who claimed he had taken a shovel and then tried to give him unwanted lunch trays. (DE 30-3 at 27-28.) After this dust up, Johnston went to school principal Lisa Emshwiller to discuss Nichols' behavior. (DE 30-6 at 1.)

3

Emshwiller then met with Nichols to discuss the concerns Johnston had raised; Nichols explained how and why he believed Johnston had been harassing him. (DE 30-6 at 1-2.) Notably, according to Nichols's own account of the conversation, when he informed Emshwiller that he had been called a racial epithet, the principal indicated that this was the first she had heard of the allegation. (DE 30-3 at 32.) Following this meeting, Emshwiller spoke with Nichols' supervisors, Schroeder and Yeakey, who made the decision to remove Nichols from his assignment at Springfield Elementary. (DE 30-5 at 1.) They claim that no decision had been made at that point with regard to whether Nichols would be used as a substitute custodian in the future. (DE 30-4 at 3; DE 30-5 at 2-3.) In any event, the Planning Department never placed Nichols at another job site. (DE 30-4 at 3-4.)

Nichols filed the pending complaint alleging race-based harassment and discrimination. (DE 1.) Michigan City Plant Planning Department has since moved for summary judgment.[2] (DE 27.)

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most

---

[2] There is also a Rule 56 Motion to Strike pending. (DE 33.) However, my decision to grant summary judgment is the same whether or not I consider the exhibits attached by that motion, so the Motion to Strike is **DENIED AS MOOT**.

favorable to the nonmoving party. *Id*. at 255. But the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

**Title VII Harassment**

Nichols first contends that Michigan City Plant Planning Department harassed him because of his race in violation of Title VII of the Civil Rights Act (as amended). In order to defeat summary judgment on this claim, he must point me to sufficient evidence to show: "(1) the work environment must have been both subjectively and objectively offensive; (2) his race must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must have been a basis for employer liability." *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (*citing Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010)).

Let's set aside the racial epithet for a minute and look at the remaining alleged misconduct he describes in his complaint. It's probably fair to characterize this mistreatment as subjectively and objectively offensive, and it's certainly plausible that a jury might find that it was severe or pervasive. The problem for Nichols is that there doesn't seem to be any evidence that it was racially motivated. With respect to a Title VII harassment claim, "[t]he complained of conduct must have ... [a] racial character or purpose." *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir. 1999) (*citing Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1308 (7th Cir. 1989)); *accord Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011). In other words, even severe or pervasive conduct that's subjectively and objectively offensive won't support a Title VII

5

race-based harassment claim if there isn't any indication that racial animosity is the driving force behind it.

So does the conduct cited by Nichols have such a racial character or purpose? It's hard to see how it does. Being rude to a temporary janitor by not telling him where to go or by making messes for him to clean up is deplorable conduct. The same goes for trying to bait him into stealing a purse or money from the cash register. I'm certainly not condoning this behavior. But there's simply no indication that it was motivated by race. To the contrary, it looks to me – if you believe Nichols – like a few members of the staff at Springfield Elementary just took an immediate and intense disliking to him. They may have acted completely unprofessionally towards him, but that's not sufficient to show a racial motivation as required under the applicable law. *See Hardin*, 167 F.3d at 345 ("Obviously, we agree with the district court that it is unfortunate that [the plaintiff] was subjected to such [abusive] behavior. Nevertheless, we cannot conclude that these actions constituted sexual or racial harassment."); *see also Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (granting summary judgment where "[n]one of these [alleged harassing] incidents are sufficiently connected to race so as to satisfy the second element of the hostile environment analysis").

That takes me to the incident alleged by Nichols in which either Johnston or another cafeteria worker (it's a bit unclear which one) called him the "n word." That's very troubling on its face. The Seventh Circuit has suggested that even one incident can be the basis for a Title VII harassment claim if it's sufficiently severe – and specifically if it involves the same inflammatory racial epithet at issue in this case. *See Cerros v. Steel Techns., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (opining that a single incident

involving a racial epithet might be sufficient to support a Title VII harassment claim); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (holding same with respect to two incidents); *see also Smith v. Sheahan*, 189 F.3d 529 (7th Cir. 1999) (holding the same with respect to a Title VII sex-based harassment claim).

But Nichols has two main problems. First and foremost, as I noted above, he didn't go to the principal or to his superiors at the Planning Department to inform them of the incident. Indeed, the first time any of them became aware of the allegation was at the meeting a few days later in which Nichols was told he was no longer needed at the school. That's important because neither Johnston nor the other cafeteria worker were Nichols's supervisor. As a recent Supreme Court decision recently clarified, a supervisor for Title VII harassment purposes is someone who has "the authority to effect a tangible change in a victim's terms or conditions of employment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2448 (2013). Here, Nichols has pointed me to zero evidence that Johnston or the unidentified cafeteria worker who (he says) called him a racial slur had the power to change the terms or conditions of his employment – and indeed, I suspect that's probably due to the fact that a school's cafeteria services manager generally doesn't have the authority to hire and fire janitors.

The distinction between supervisors and non-supervising co-workers makes a world of difference in this case. Courts are much more willing to impose vicarious liability on an employer for harassment when the offender is the plaintiff's supervisor. *Id.* at 2441. When it's just an ordinary co-worker, however, an employer will only be liable for harassment "if the employer was negligent with respect to the offensive behavior.'" *Id.*; *accord Cerros*, 288 F.3d at 1045.

7

And there's the rub for Nichols.  How could Springfield Elementary or the Planning Department be negligent in stopping the continued use of racial slurs (and similar outrageous conduct) if the people up the chain of command didn't know that was going on until they had already decided to remove Nichols from the job site?  Obviously they couldn't.  Now, it's possible that Nichols could argue that he was removed in retaliation for complaining about the racial epithet.  But he hasn't brought that type of claim.  He's asserting a harassment claim against his employer.  And there's just no evidence that – with respect to the sole alleged incident clearly involving racial animus – his employer was even aware of his co-workers' purported misconduct, much less that it was negligent in preventing it.  Summary judgment is warranted on the claim for this reason alone.

That's not all.  Even severe race-based harassment must do more than offend the victim.  It instead must be "so severe or pervasive that it *alters the conditions of the plaintiff's employment*."  *Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010) (emphasis added); *accord Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).  In this case, Nichols hasn't pointed me to any facts indicating that the single – and seemingly offhand – epithet fundamentally altered the conditions of his employment.  Instead, it seems like just another example of his (generally non-racially motivated) alleged mistreatment by the staff at Springfield Elementary, and especially Johnston, whom Nichols portrays as taking an intense – and probably irrational, if you believe his allegations – dislike to him.

At the end of the day, the bottom line is that Nichols hasn't demonstrated that the (alleged) one-time use of a racial epithet was so severe and so offensive *in this particular*

*case* that it fundamentally changed the terms of his employment. Nor has he shown that Springfield Elementary or the Planning Department knew that their employees were harassing him but failed to stop the mistreatment. He needed to do both of those if he wanted his lawsuit to go to trial. Summary judgment is the time in the litigation process where a party needs to lay its cards on the table and tell me how its going to prevail on its claims, assuming the jury believes its evidence. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit."). Therefore, summary judgment is appropriate on his Title VII harassment claim.

### Title VII Discrimination

Now on to the discrimination claim. Nichols doesn't really spend much time explaining this theory; indeed, he mostly just says that he was discriminated against without identifying the facts that might support the allegation. Presumably he thinks that either Springfield Elementary told him not to come back because he was African-American, or the Planning Department refused to staff him on additional temporary jobs for the same reason, or perhaps a bit of both.

Given that vagueness and paucity, I'm not inclined to spend much time on this claim. It should suffice to say, Nichols doesn't come close to demonstrating that he has a viable Title VII discrimination claim. "Under the direct[3] method [of proving discrimination], a plaintiff must come forward either with direct or circumstantial

---

[3] The alternative to the "direct method." is the "indirect method," which generally shifts the burden of proof back to a defendant-employer if the plaintiff can show (among other things) that another employee not in his or her class was treated more favorably than he or she was. *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). This approach is inapplicable in this case because Nichols doesn't allege that he was treated different than any other employee.

evidence that 'points directly to a discriminatory reason for the employer's action.'" *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750 n.3 (7th Cir. 2006). Nichols just hasn't done that here. He's pointed me to nothing concrete showing that his race motivated Springfield Elementary's decision to tell him not to return to the school, or the Planning Department's decision not to staff him on another job. Indeed, it seems pretty much undisputed that Nichols was removed from Springfield Elementary because he was involved in a number of confrontations with the school's staff members, and the Planning Department didn't place him on another job site because of the problems he had at the school.

It very well might be the case that Nichols didn't do anything to warrant the mistreatment by the Springfield Elementary staff, and if that's the case, it's especially unfortunate that the Planning Department decided not to staff him on additional projects. But getting a raw deal isn't the same thing as getting a raw deal *because you're a member of a protected class.* Nichols needed to point me to evidence showing that the latter is what happened if he wanted to get a discrimination claim past the summary judgment stage, and he simply didn't do that. Therefore, summary judgment is warranted on that claim as well.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** the pending Motion for Summary Judgment (DE 27) in its entirety. Because this ruling disposes of all the issues in this case, the clerk shall **ENTER FINAL JUDGMENT** in favor of the Michigan City Plant Planning Department stating that James Nichols is entitled to no relief on his complaint. The clerk shall treat this civil action as **TERMINATED**. All further settings in this

action are hereby **VACATED**. Finally, for the reasons noted above, the pending Motion to Strike (DE 33) is **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: August 1, 2013.

                                                  s/ Philip P. Simon
                                                  PHILIP P. SIMON, CHIEF JUDGE
                                                  UNITED STATES DISTRICT COURT